# EXHIBIT 1

Kyle Gurwell (SBN 289298)
Law Office of Kyle Gurwell
7755 Center Ave Ste 1100
Huntington Beach CA 92647
(714) 372-2245
kng@lawofficekg.com

*Attorney for Plaintiff*

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/17/2023 10:09 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

# SUPERIOR COURT FOR THE STATE OF CALIFORNIA
# FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| Lyvette Grimes, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>    - against -<br><br>Ralphs Grocery Company,<br><br>     Defendant | Case No. 23STCV19687<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Ralphs Grocery Company ("Defendant") sells slices of "Smoked Gouda" identified as having a "distinctive, smoky flavor" under the Private Selection brand ("Product").

//

//




## I. SMOKING PROCESS

2. Smoking is a processing method to preserve or improve the flavor of food by exposing it to smoke, usually from burning wood.

3. The drying action of the smoke and the different phenol compounds helps to preserve protein-rich foods such as meat, cheese, almonds, and fish.

4. The origins of smoking date to prehistory, as nomadic peoples experimented with fire and primitive cheese products.

5. The earliest record of smoked cheese comes from ancient Rome, when an owner of a cheese shop was forced to share space in the *macellum* with a baker.[1]

6. The baker's wood burning fire imparted a distinct flavor to the cheese, which varied based on the type of wood that was used.

7. For example, wood chips from deciduous hardwood trees of the genus *Carya*, or hickory, provide a hearty and sweet flavor to cheese and meat.

8. During the second half of the twentieth century, the popularity of smoking

---

[1] *Macellum* is the Italian name for the farmer's markets of ancient Roman that sold freshly made foods.

decreased due to the prevalence of "smoke flavor," which is smoke condensed into a liquid form.[2]

9. The past two decades have seen consumers increasingly embrace foods without additives.

10. According to research group Mintel, this is partly due to media attention focused on lack of transparency in the food industry, and revelations about what goes into what people eat.[3]

11. This concern is especially acute given European Food Safety Authority ("EFSA") reports that many liquid smoke flavorings contain compounds at potentially toxic levels.[4]

## II. FLAVOR SOURCE REQUIRED TO BE DISCLOSED

12. Research shows that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby "develop[ing] sensory expectations" about attributes such as its taste and the source of that taste.[5]

13. Consistent with these principles, the Federal Food Drug and Cosmetic Act ("FFDCA") authorized the Food and Drug Administration ("FDA") to establish regulations to prominently inform consumers of the source of a food's main flavor.

14. This State adopted and incorporated these laws and regulations through the Sherman Food, Drug, and Cosmetic Law. Cal. Health & Saf. Code § 109875, *et seq*. ("Sherman Law").

15. These regulations require that whenever "[a] label, labeling, or advertising of a food makes any direct or indirect representations with respect to [a] primary recognizable flavor(s), by

---

[2] Matthew Sedacca, Liquid Smoke: The History Behind a Divisive Culinary Shortcut – Barbecue's love/hate relationship with the manufactured flavor, Eater.com, June 15, 2016.
[3] Lynn Dornblaser, Director, Innovation & Insight, Mintel, Clean Label: Why this trend is important now, 2017.
[4] Faizah Ahmed, Smoke-Flavored Foods May Be Toxic, Food Safety News, Feb. 16, 2010.
[5] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Masako Okamoto and Dan Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

word, vignette, e.g., depiction of a fruit, or other means," that is considered the "characterizing flavor," and its source must be disclosed to consumers. 21 C.F.R. § 101.22(i).

16. For example, where a food gets its entire taste from a characterizing ingredient or processing method, it should be labeled without the word "flavored." 21 C.F.R. § 101.22(i)(1).

17. However, where some of the food's taste is from a characterizing ingredient or processing method, but then contains added flavoring to simulate the taste of that ingredient or processing method, "the name of the characterizing flavor may be immediately preceded by the word 'natural' and shall be immediately followed by the word 'flavored'…, e.g., 'natural strawberry flavored shortcake,' or 'strawberry flavored shortcake.'" 21 C.F.R. § 101.22(i)(1)(i).

18. According to one commentator, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two."[6]

19. For example, the FDA considered it misleading to describe a food as "smoked" when "true smoke is absorbed in a liquid or other medium, and that medium is added to a food to provide a smoke flavor."

20. Even when a food has undergone some smoking, the addition of liquid smoke flavoring is required to be prominently disclosed on the front label, such as "with added smoke flavor," "[with] natural smoke flavor" or "flavor added."

21. The addition of liquid smoke flavor to cheese was significant enough to warrant a specific regulation for "Spiced, flavored standardized cheeses." 21 C.F.R. § 133.193.

22. The FDA has warned companies that fail to inform consumers of foods advertised as smoked but have added smoke flavor:

> If these smoke ingredients [natural smoke flavor] are added flavors, they should be declared in accordance with 21 C.F.R. § 101.22 [on the front of the label]; however, if these ingredients describe the smoking process, then they must not be listed as ingredients in the

---

[6] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, Aug. 11, 2006.

ingredient statement.[7]

### III. LABEL IS MISLEADING

23. The Product's labeling is misleading because as a cheese with a federal and state standard of identity, the front label statement of "Gouda" is required to "include [] a declaration of any flavor [] that characterizes the food, in the manner prescribed in § 101.22 of this chapter." 21 C.F.R. § 133.193(b); 21 C.F.R. § 133.142 ("Gouda cheese.").

24. However, the front label statements of "Smoked Gouda" and "distinctive, smoky flavor" fail to disclose the addition of liquid smoke flavoring.



25. Gouda cheese that gets its smoked taste exclusively from being smoked is not a rare or pricy delicacy and exists in the marketplace.

26. This type of cheese is not technologically or otherwise unfeasible to produce, shown through the labeling of other brands, identified as "Smoked Gouda" and "Hickory-Smoked Gouda Cheese Slices."

---

[7] FDA Warning Letter, Smoked Seafood, Inc. d/b/a Little Mermaid Smokehouse, MARCS-CMS 515739 – June 27, 2017.

 

27. These products are labeled identically to the Private Selection Smoked Gouda, even though they get their smoked taste entirely from being smoked over hardwoods.

28. The result is that consumers are misled by products that appear identical, even though Private Selection Smoked Gouda is not equal in quality to those without added smoke flavor.

29. Where Gouda cheese has undergone some smoking but boosts its smoke taste by adding liquid smoke flavor, other companies represent this by the required front label statements, shown as "Smokehouse Gouda – Gouda Natural Cheese with Natural Smoke Flavor."

6
CLASS ACTION COMPLAINT
*Grimes v. Ralphs Grocery Company*, No.



30. Instead of disclosing the addition of smoke flavor on the front label, Private Selection Smoked Gouda relegates this information to the ingredient list on the back, where consumers in a hurry will not notice it.

> **INGREDIENTS:** CULTURED PASTEURIZED MILK, SALT, ENZYMES, SMOKE FLAVOR, COLOR ADDED.

31. Consumers are misled because the absence of required, qualifying terms, i.e., "natural smoke flavored Gouda," "smoke flavored Gouda," or "Gouda with natural [added] smoke flavor," gives them the false impression that the Product's smoked attributes – including taste and color – are imparted only by smoking, when this is false. 21 C.F.R. § 101.22(i)(1)(i).

32. The "Smoke Flavor" and "Color Added" further misleads consumers by darkening the Product, giving the impression it was smoked for a longer period than it was.

33. The 400 flavor compounds which contribute to a "smoked taste" include pyrazines, aromatic hydrocarbons, alcohols, organic acids, esters, furans, phenols, carbonyl and noncarbonyl

compounds, and various oxygen- and nitrogen-containing heterocyclic compounds.

34. Added smoke flavor cannot compensate for the Product not getting its smoked taste only from being smoked over hardwoods for several reasons.

35. First, liquid smoke flavoring lacks the delicate balance of phenolic compounds, including 2,3-Butanedione, 2,3-Pentanedione, 3-Butanoic acid, 3-Methylbutanoic acid, 4-Ethylguaiacol, 4-Propylguaiacol and/or 4-Vinylguaiacol.

36. Second, the smoke generation process influences the wood-smoke chemical composition, generating compounds that are not capable of being included in a "smoke flavor," like trans-isceugenol and 4-methylsyringol.

37. When foods like Gouda cheese are exposed to volatiles and particulate matter found in smoke, they undergo chemical reactions which form new flavor compounds.

38. Third, certain compounds only serve as intermediates in the formation of more stable forms of compounds which are essential to the aroma of smoke.

39. Fourth, in most systems involving only smoke generation instead of smoking food, there is only a focus on volatile compounds which are believed to have distinctive odor properties at low concentrations.

40. This overlooks that nonvolatile compounds significantly contribute to smoke flavor.

## PARTIES

41. Plaintiff Lyvette Grimes is a citizen of Los Angeles, Los Angeles County, California.

42. Defendant Ralphs Grocery Co. is an Ohio corporation with a principal place of business in Los Angeles, Los Angeles County, California.

43. Ralphs is the oldest grocery store chain west of the Mississippi River.

44. All 185 Ralphs stores are in Southern California.

45. Private Selection refers to the private label brand of products sold in Defendant's stores.

46. This term denotes products manufactured or packaged for sale under the name of the retailer or its sub-brands rather than that of the manufacturer.

47. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Ralph's grocery stores near where she lives between August 2020 and the present.

48. Plaintiff is like most consumers who prefer products, especially natural foods like cheese, which do not contain added flavorings, for the reasons indicated above.

49. Plaintiff read and relied on the front label statements of "Smoked Gouda" and "Distinctive, Smoky Flavor" and the darker colored cheese slices.

50. Plaintiff expected the Product's smoked taste was entirely from being smoked over hardwoods, instead of only some of its smoked taste being the result of such smoking.

51. Based on consumer experience with how foods containing added flavoring would disclose such facts to consumers on the front label, Plaintiff expected that if the Product used liquid smoke flavoring, this would be prominently presented to her.

52. As a result of the false and misleading representations, the Product is sold at a premium price, approximately $3.39 per 10 slices (8 oz), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

53. Plaintiff bought the Product at or exceeding the above-referenced price.

54. Plaintiff paid more for the Product than she would have had she known the representations and omissions were false and misleading or would not have purchased it.

55. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

56. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

57. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its attributes, features, and/or composition.

58. Plaintiff is unable to rely on the representations not only of this Product, but other similar foods that are represented as being smoked because she is unsure whether those representations are truthful.

59. If Defendant's labeling were to be truthful, Plaintiff could rely on the labeling of other such products.

## JURISDICTION AND VENUE

60. Jurisdiction over this proceeding is based on activity in the State of California, and in this County, and misconduct alleged herein which was intentionally directed at residents of the State of California.

61. This Court has jurisdiction under Article VI, § 10 of the California Constitution and § 410.10 of the Code of Civil Procedure ("CCP").

62. This Court has subject matter jurisdiction over this class action pursuant to Bus. & Prof Code ("BPC") § 17200 *et seq*. (the "UCL") and CCP § 382.

63. Plaintiff does not assert claims arising under the laws of the United States of America.

64. Venue is proper in this judicial district pursuant to CCP § 395, because Defendant sells the Product to consumers within this State from Ralphs grocery stores and Plaintiff relied on the representations made to her in this County, which is where she learned they were false and misleading.

## CLASS DEFINITION AND ALLEGATIONS

65. This action is brought as a class action pursuant to CCP § 382 on behalf of the following class:

> **California Class:** All persons in California who purchased the Product in California during the statutes of limitations for each cause of action alleged.

66. Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

67. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

68. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

69. Plaintiff is an adequate representative because her interests do not conflict with other members.

70. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

71. The class of persons is sufficiently numerous because Defendant has sold the Product with the identified representations for several years throughout this State, and it was bought by thousands of consumers.

72. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

73. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

74. Plaintiff seeks class-wide injunctive relief because the practices continue.

## CLAIMS FOR RELIEF

### FIRST CLAIM
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200,** *et seq.*

75. Plaintiff incorporates all preceding paragraphs.

76. California's Unfair Competition Law, BPC § 17200, *et seq.* ("UCL"), prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

advertising.

77. Defendant's representations and omissions are "unlawful" because they violate the FFDCA and its implementing regulations, including:

(a) 21 U.S.C. § 343(a), which deems food misbranded when the label is "false or misleading in any particular";

(b) 21 C.F.R. § 101.22(i)(1)(i), which requires that the addition of flavoring simulating a characterizing ingredient or processing method be disclosed to consumers; and

(c) 21 C.F.R. § 133.193(b), which requires a cheese with a federal and state standard of identity to "include [] a declaration of any flavor [] that characterizes the food, in the manner prescribed in § 101.22 of this chapter." 21 C.F.R. § 133.193(b);

78. Defendant's conduct is "unlawful" because it violates California's False Advertising Law, BPC § 17500, *et seq.* ("FAL"), and Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA").

79. Defendant's conduct violates the Sherman Law, including:

(a) Section 110111 (adopting all FDA nonprescription drug regulations as state regulations);

(b) Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

(c) Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

(d) Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

(e) Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded."); and

(f) Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

(g) Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

80. Each of the challenged statements and omissions made and actions taken by Defendant as described herein violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

81. Defendant's conduct was and continues to be unfair and fraudulent because it made materially false representations and omissions that caused consumers to believe the Product's smoked taste and darker color was only from being smoked over hardwoods even though this was due in part to added liquid smoke flavoring.

82. Defendant is aware of the representations and omissions it has made about the Product and that the Product's smoked taste and darker color was not only from being smoked over hardwoods but due in part to added liquid smoke flavoring.

83. Had Plaintiff been aware of Defendant's practices, she would not have purchased the Product or paid as much, suffering damages.

84. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence corrective advertising.

## SECOND CLAIM
**Violation of California's False Advertising Law,
Cal. Bus. & Prof. Code § 17500, *et seq.***

85. The FAL prohibits "mak[ing] any false or misleading advertising claim."

86. Defendant makes "false [and] misleading advertising claim[s]" by deceiving consumers about how the Product's smoked taste and darker color was only from being smoked over hardwoods even though this was due in part to added liquid smoke flavoring.

87. In reliance on this false and misleading advertising, Plaintiff purchased and consumed the Product without knowledge its smoked taste and darker color was not only from being smoked over hardwoods but due in part to added liquid smoke flavoring.

88. Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

89. Plaintiff and Class Members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## THIRD CLAIM
### Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

90. The CLRA adopts a statutory scheme prohibiting deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

91. Defendant's policies, acts, and practices were designed to, and did, result in the purchase, consumption and/or use of the Product primarily for personal, family, or household purposes, and violated and continue to violate sections of the CLRA, including:

   (a) Civil Code § 1770(a)(5), because Defendant represented that the Product had characteristics, attributes, features, capabilities, uses, benefits, and qualities it did not have;

   (b) Civil Code § 1770(a)(9), because Defendant advertised the Product with an intent not to sell it as advertised; and

   (c) Civil Code § 1770(a)(16), because Defendant represented that the Product had been supplied in accordance with its previous representations, when it was not.

92. Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will send a CLRA

Notice to Defendant concurrently with the filing of this action or shortly thereafter, which details and includes these violations of the CLRA, demand correction of these violations, and provide the opportunity to correct these business practices.

93. If Defendant does not correct these business practices, Plaintiff will amend or seek leave to amend the Complaint to add claims for monetary relief, including restitution and actual damages under the CLRA, and injunctive relief to enjoin the unlawful methods, acts and practices alleged, pursuant to Cal. Civ. Code § 1780.

## FOURTH CLAIM
### Breach of Express Warranty

94. The Product was manufactured, identified, marketed and sold by Defendant and expressly warranted to Plaintiff that its smoked taste and darker color was only from being smoked over hardwoods even though this was due in part to added liquid smoke flavoring.

95. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

96. Defendant knew the product attributes that potential customers like Plaintiff were seeking, foods that did not have added flavor additives and got their taste through natural processes and developed its marketing and labeling to directly meet those needs and desires.

97. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that its smoked taste and darker color was only from being smoked over hardwoods even though this was due in part to added liquid smoke flavoring.

98. Defendant affirmed and promised that the Product's smoked taste and darker color was only from being smoked over hardwoods even though this was due in part to added liquid smoke flavoring.

99. Defendant described the Product so Plaintiff and consumers believed its smoked taste and darker color was only from being smoked over hardwoods even though this was due in

part to added liquid smoke flavoring, which became part of the basis of the bargain that it would conform to its affirmations and promises.

100. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

101. This duty is based on its outsized role in the market for this type of Product, based on the recognition and goodwill built up over decades under the Private Selection brand.

102. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

103. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

104. Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

105. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the proposed Class, pray for judgment and relief as follows:

A. Certification of the Class, designating Plaintiff as representative of the Class and Plaintiff's Counsel as counsel for the Class;

B. A declaration that Defendant has committed the violations alleged;

C. For injunctive relief the Court deems appropriate;

D. For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and Cal Civ. Code § 1780, except for monetary damages under the CLRA;

E. Compensatory damages, the amount of which is to be determined at trial, except for monetary damages under the CLRA;

F. For punitive damages;

G. For attorneys' fees;

H. For costs of suit incurred;

I. For pre- and post-judgment interest; and

J. For such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action so triable.

Dated: August 17, 2023

Respectfully submitted,

/s/ Kyle Gurwell
Kyle Gurwell (SBN 289298)
Law Office of Kyle Gurwell
7755 Center Ave Ste 1100
Huntington Beach CA 92647
(714) 372-2245
kng@lawofficekg.com

Spencer Sheehan (*Pro Hac Vice* Forthcoming)
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Counsel for Plaintiff and Proposed Class*

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| Lyvette Grimes, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   - against -<br><br>Ralphs Grocery Company,<br><br>      Defendant | Venue Declaration Pursuant to California Civil Code § 1780(d) |

I, Lyvette Grimes, hereby declare and state as follows:

1.  I am over the age of 18 and a Plaintiff in this action.

2.  I make this declaration as required by California Civil Code § 1780(d) and pursuant to California Civil Code § 2015.5.

3.  The facts contained in this declaration are based on my personal knowledge and information that I have gathered and is available to me, and if called upon to do so, I would testify to the matters stated herein.

4.  The Complaint in this action is filed in the proper place for trial of this action in that Los Angeles County is a county in which Defendant does business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date/Executed on:   August 16, 2023 | 6:37:13 PM EDT

Place:   Los Angeles, CA

                     */s/ Lyvette G.*
                     61CDB3DE972449E...
                     Lyvette Grimes

Venue Declaration

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

Lyvette Grimes, individually and on behalf of all others similarly situated,

        Plaintiff,

- against -

Ralphs Grocery Company,

        Defendant

I, Lyvette Grimes, hereby declare and state as follows:

1. I am over the age of 18 and a Plaintiff in this action.
2. I make this declaration pursuant to California Code of Civil Procedure § 2015.5.
3. I have reviewed the Complaint provided to me and it is true to my knowledge except as to matters alleged on information and belief, and that as to those matters, I believe them to be true.
4. I have purchased the product or service identified in the Complaint and relied on the representations and omissions identified therein.
5. I am aware that the Complaint in this action is a publicly filed document.
6. I seek to represent similarly situated consumers who bought the Product.
7. I have requested my attorney proceed with the filing of this Complaint.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date/Executed on: August 16, 2023 | 6:37:13 PM EDT

Place: _____

_____
Lyvette Grimes