Kyle Gurwell (SBN 289298)
Law Office of Kyle Gurwell
7755 Center Ave Ste 1100
Huntington Beach CA 92647
(714) 372-2245
kng@lawofficekg.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| LYVETTE GRIMES, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> - against - <br><br> RALPHS GROCERY COMPANY, <br><br> Defendant. | Case No. 2:23-cv-09086-TJH-PD <br><br> First Amended Class Action Complaint <br><br> Jury Trial Demanded |

Plaintiff Lyvette Grimes ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

## I.    CONSUMER AVOIDANCE OF ADDITIVES

1.    According to a recent survey of American consumers by the International Food Information Council ("IFIC"), almost thirty percent of the public consider additives in food one of their top three concerns.[1]

2.    Additives refer to non-food ingredients created in laboratories to fulfill various functions.

3.    These include facilitating processing ("processing aids"), improving

---

[1] Tom Neltner, Environmental Defense Fund, Chemicals Policy Director, Chemicals in food continue to be a top food safety concern among consumers, Food Navigator, Sept. 20, 2021.

appearance ("colorants"), creating or enhancing taste ("flavorings"), and extending shelf-life and slowing deterioration ("preservatives").

4.    Consumer aversion to additives is based on the belief that chemicals of any kind are not necessarily safe and may pose health risks.[2]

5.    Food without additives are considered by consumers to be natural and healthier.

6.    This behavior makes sense because although they may be approved for consumption, "some have been known to induce allergic reactions, and others have been linked to asthma, attention deficit hyperactivity disorder and cancer – although research remains inconclusive."[3]

7.    According to one observer, "Our foods are laden with additives that are meant to enhance flavor, color and shelf life that research has shown are either bad for people to consume or inconclusively so."[4]

8.    A well-known commentator echoed consumer concern that "Packaged and processed foods are scary [because] It's nearly impossible to keep up with which ingredients are safe to eat and which ones cause some kind of harm."

## II.    LEGAL BACKGROUND

9.    Over 100 years ago, consumers were similarly concerned, based on the reports of muckraking journalists, about the harmful and untested chemicals added to their food.

10.    In response to an unregulated environment where consumers were sold foods with dangerous, undisclosed chemicals that attempted to replace the wholesome

---

[2] Cary Funk et al., Public Perspectives on Food Risks, Pew Research Center, Nov. 19, 2018.

[3] Bhavana Kunkalikar, Processed danger: Industrial food additives and the health risks to children, News-Medical.net, May 23, 2023 (citing recent study in the Journal of the Academy of Nutrition and Dietetics, researchers explore the potential adverse health effects on children due to the use of industrial additives in processed food).

[4] Frank Giustra, You Might Be Surprised by What's in Your Food, Modern Farmer, Feb. 8, 2021.

ingredients and natural production processes advertised to them, the Pure Food and Drug Act of 1906 set standards for what companies were required to tell the public.

11.    These requirements for honest labeling were strengthened by the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938, which set standards for what labeling of packaged foods had to disclose. 21 U.S.C. § 301 *et seq*.

12.    Beyond the potential to cause physical harm, these synthetic substances were significantly cheaper, and their undisclosed usage resulted in consumers getting less than what they bargained for.

13.    To facilitate an honest marketplace and protect consumers, the Food and Drug Administration ("FDA") developed a group of consistent rules about how a food's taste should be disclosed.

14.    This required that whenever "[a] label, labeling, or advertising of a food makes any direct or indirect representations with respect to [a] primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means," the source of this "characterizing flavor" must be disclosed to consumers. 21 C.F.R. § 101.22(i)(1).

15.    According to one scholar, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two."[5]

16.    First, it defined a flavor as a substance which imparts taste. 21 C.F.R. §§ 101.22(a)(1) and (3).

17.    Second, it defined natural flavor as the "essential oil, oleoresin, essence or extractive" from fruits or vegetables, "whose significant function [] is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

18.    Third, artificial flavor was defined as "any substance, the function of which is to impart flavor" from synthetic or chemical sources. 21 C.F.R § 101.22(a)(1).

---

[5] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.

3

19.     Since "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging," like whether it communicates its taste is only from being smoked over hardwoods, the source of this smoked taste becomes part of a food's "common or usual name."[6] 21 C.F.R. § 102.5(a); 21 C.F.R. § 101.22(i).

20.     This State adopted and incorporated these laws and regulations through the Sherman Food, Drug, and Cosmetic Law. Cal. Health & Safety Code ("HSC") § 109875, *et seq*. ("Sherman Law").

III.    **SMOKE FOODS AND SMOKED FLAVORING**

21.     Smoking is a processing method to preserve or improve the flavor of food by exposing it to smoke from burning hardwoods.

22.     The drying action of the smoke and the different phenol compounds helps to preserve protein-rich foods such as meat and cheese.

23.     During the second half of the twentieth century, the popularity of smoking foods over hardwoods decreased due to the prevalence of "smoke flavor," which is smoke condensed into a liquid form, known as liquid smoke or pyroligneous acid.[7]

24.     For numerous reasons, the past two decades have seen a resurgence in demand for smoked foods without added smoke flavoring.

25.     First, consumers value production methods used to make foods.[8]

---

[6] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

[7] Matthew Sedacca, Liquid Smoke: The History Behind a Divisive Culinary Shortcut – Barbecue's love/hate relationship with the manufactured flavor, Eater.com, Jun 15, 2016.

[8] Del Giudice, Teresa, Carla Cavallo, and Riccardo Vecchio. "Credence attributes, consumers trust and sensory expectations in modern food market: is there a need to redefine their role?." International Journal on Food System Dynamics 9.1012-2018-4128 (2018).

26.    These credence attributes are quality characteristics which cannot accurately be assessed at the point of sale without additional information.

27.    According to researchers, "Cues signaling traditional production seem to affect liking in a positive direction, whereas signals of 'modernity' or 'industrialized food' seem to have a negative impact on liking."[9]

28.    In this context, consumers prefer foods made only from being smoked over hardwoods than those to which liquid smoke flavor is added.

29.    Second, there is an increasing avoidance by consumers of foods with even "natural flavor," a mysterious additive that is the "fourth most common ingredient listed on labels [after] salt, water and sugar."[10]

30.    Many commentators have recognized that "because of the wide variety of ingredients that typically go into 'natural' flavorings, 'there does not seem to be much of a difference between natural and artificial flavors.'"[11]

31.    Third, reports from the European Food Safety Authority ("EFSA") that many liquid smoke flavorings contain compounds at levels which may pose a toxic risk when consumed.[12]

32.    Fourth, liquid smoke flavor lacks the 400 flavor compounds which provide a true smoked taste, such as pyrazines, aromatic hydrocarbons, alcohols, organic acids, esters, furans, phenols, and carbonyl and noncarbonyl compounds.

33.    Moreover, the smoke generation process influences the wood-smoke composition, generating compounds that are not capable of being included in liquid smoke flavor, like trans-isceugenol and 4-methylsyringol.

---

[9] Fernqvist, F. and Ekelund, L. (2014) Credence and the effect on consumer liking of food – A review. Food Quality and Preference. Volume: 32, Part C, pp 340-353.
[10] Amanda Woerner, What are natural flavors, really?, Life by Daily Burn, CNN, Jan. 14, 2015.
[11] Roni Caryn Rabin, Are 'Natural Flavors' Really Natural?, New York Times, Feb. 1, 2019.
[12] Faizah Ahmed, Smoke-Flavored Foods May Be Toxic, Food Safety News, Feb. 16, 2010.

## IV.    **LABELING IS MISLEADING**

34.    Cheese industry observers note that "smoked cheeses are on the rise," as "[p]eople are seeking bigger flavors, bolder flavors, deeper flavors," that only smoking over hardwoods can provide.

35.    To appeal to these consumers, Ralphs Grocery Company ("Defendant") sells slices of "Smoked Gouda" identified as having a "distinctive, smoky flavor" under the Private Selection brand ("Product").



36.    However, "Smoked Gouda" and "distinctive, smoky flavor" are false, deceptive, and/or misleading, because the Product uses liquid smoke to provide its "smoked" taste, disclosed only in the fine print of the ingredient list on the back of the package where it states, "SMOKE FLAVOR."

INGREDIENTS: CULTURED PASTEURIZED MILK, SALT, ENZYMES, SMOKE FLAVOR, COLOR ADDED.

37.     The FDA has warned companies that fail to inform consumers of foods advertised as smoked but have added smoke flavor:

> If these smoke ingredients [natural smoke flavor] are added flavors, they should be declared in accordance with 21 C.F.R. § 101.22 [on the front of the label]; however, if these ingredients describe the smoking process, then they must not be listed as ingredients in the ingredient statement.[13]

38.     Whether labeling of a food is misleading is based on "all representations made or suggested," and "the extent that the labeling [] fails to reveal facts concerning the food." HSC § 110290.

39.     The Product is "misbranded" and misleads consumers because "Smoked Gouda" and "distinctive, smoky flavor" is false or misleading because it fails to disclose the addition of liquid smoke flavor. 21 U.S.C. § 343(a)(1); HSC § 110660.

_____

[13] FDA Warning Letter, Smoked Seafood, Inc. d/b/a Little Mermaid Smokehouse, MARCS-CMS 515739 – June 27, 2017.

40.    This is because it fails to prominently and conspicuously reveal whether its smoked taste comes from smoking over hardwoods compared to added smoke flavoring.

41.    The replacement of smoking over hardwoods with added smoke flavor is of material interest to consumers seeking a natural product like cheese without additives, which gets its smoked taste entirely through a natural smoking process.

42.    The Product is "misbranded" and misleading because "Smoked Gouda" "purports to be, or is represented as, a food for which a definition and standard of identity has been established [] [but] [its] label fails to bear the name of the food specified in the standard or otherwise fails to conform to the definition and standard." HSC § 110710; 21 U.S.C. § 343(g).

43.    As a cheese with a federal and state standard of identity, the front label statement of "Gouda" is required to "include [] a declaration of any flavor [] that characterizes the food, in the manner prescribed in § 101.22 of this chapter." 21 C.F.R. § 133.193(b); 21 C.F.R. § 133.142 ("Gouda cheese.").

44.    The FDA considered it misleading to describe a food as "smoked" when "true smoke is absorbed in a liquid or other medium, and that medium is added to a food to provide a smoke flavor."

45.    Even when a food has undergone some smoking, the addition of liquid smoke flavoring is required to be prominently disclosed on the front label, such as "with added smoke flavor," "[with] natural smoke flavor" or "flavor added."

46.    Where cheese may have undergone some smoking but adds smoke flavor, it must disclose this to consumers, shown by the sliced cheeses of other companies who state, "with Natural Smoke Flavor."

 

47.     In contrast, the Private Selection Smoked Gouda informs purchasers only that it has a "distinctive, smoky flavor," instead of telling them the source of this "smoky flavor."

48.     The result is that consumers are misled by products that appear identical, even though Private Selection Smoked Gouda is not equal in quality to smoked cheeses without added smoke flavor.

49.     Consumers are misled because the absence of required, qualifying terms, i.e., "natural smoke flavored Gouda," "smoke flavored Gouda," or "Gouda with natural [added] smoke flavor," gives them the false impression that the Product's smoked attributes, including taste and color, are imparted only by smoking, when this is false. 21 C.F.R. § 101.22(i)(1)(i).

50.     Beyond adding smoke flavor, the Product's use of "Color Added" further

1    misleads consumers.

2      51.   The added color darkens the Product, giving the impression it was

3    smoked for a longer period than it was, giving the appearance of higher quality.

4    **V.    CONCLUSION**

5      52.   Consumers buying cheese represented as smoked, without any indication

6    that the smoked taste comes from added flavoring, are seeking to avoid additives like

7    liquid smoke flavor.

8      53.   As a result of the false and misleading representations and omissions, the

9    Product is sold at a premium price, approximately $3.39 per 10 slices (8 oz), excluding

10   tax and sales, higher than similar products, represented in a non-misleading way, and

11   higher than it would be sold for absent the misleading representations and omissions.

12

13                              **<u>PARTIES</u>**

14     54.   Plaintiff Lyvette Grimes is a citizen of Los Angeles, Los Angeles

15   County, California.

16     55.   Defendant Ralphs Grocery Co. is an Ohio corporation with a principal

17   place of business in Ohio.

18     56.   Ralphs is the oldest grocery store chain west of the Mississippi River.

19     57.   All 185 Ralphs stores are in Southern California.

20     58.   Private Selection refers to the private label brand of products sold in

21   Defendant's stores.

22     59.   "Private label" denotes products manufactured or packaged for sale

23   under the name of the retailer or its sub-brands rather than that of the manufacturer.

24     60.   The Private Selection brand includes no fewer than 54 varieties of cheese

25   in a range of formats.

26     61.   Private Selection sells at least four varieties of crumbled cheese,

27   including Traditional Feta, Blue Cheese, Smoked Blue Cheese, and Crumbled Goat

28   Cheese.



62.    Private selection sells at least eighteen varieties of sliced cheese, including Sharp Cheddar, Provolone, Colby, Pimento Colby, Fuego Colby Jack, Smoked Gouda, Aged Gouda, Sharpe Cheddar, Mild Cheddar, Aged Cheddar, White Cheddar, Lacey Swiss, Swiss, Vermont Sharp White Cheddar Mozzarella, Muenster, Pepper Jack, Baby Swiss, Havarti, and Horseradish Havarti.



63.    Private selection sells at least five varieties of bagged shredded cheese, including Aged Cheddar Blend, Chef's Blend, Italian Style Blend, Pizzeria Style Blend, and Alpine Blend.




64.    Private selection sells at least seven varieties of shredded cheese in cups, including Grated Parmesan, Shredded Parmesan, Shaved Parmesan, Mexican Style Blend, Mozzarella, Smoked Gouda and Shredded Romano.

 

65.    Private selection sells at least three varieties of block cheese, including Vermont Extra Sharp White Cheddar, Cheddar Gruyere with Gruyere Notes and Wisconsin Extra Sharp Cheddar.





66.    Private selection sells at least three varieties of cracker cuts of cheese, including Sharp Cheddar, Gouda, and a variety pack, in addition to selling the cracker cuts with crackers.

67.    Private selection sells at least eight varieties of cheese dips, including

Queso Blanco, Extra Sharp Cheddar & Poblano, Medium Chile Con Queso, Aged Cheddar & Jalapeno, Parmesan & Peppercorn, Creamy Jalapeno, Medium Queso Blanco and Pimento Cheese.

68.    Private selection sells at least five varieties of cheese cubes, including Colby Jack, Pepper Jack, Gouda, Sharp Cheddar and Mild Cheddar.



69.    Plaintiff is like most consumers who prefer products, especially natural foods like cheese, which do not contain additives, for the reasons indicated above.

70.    Plaintiff read, saw and relied on the label's statements of "Smoked Gouda" and "distinctive smoky flavor" and expected the cheese's taste was not from smoke additives but from being smoked over hardwoods.

71.    Plaintiff relied on the omission of added smoke flavoring from the front label as it related to the Product's smoked attributes.

72.    Plaintiff relied on the darker color of the cheese which made it appear darker than it otherwise would have been, indicative of being smoked for a longer period.

73.    Based on her experience with how foods containing added flavoring would disclose such facts to consumers on the front label, Plaintiff expected that if the Product used liquid smoke flavoring, this would be prominently presented to her.

74.    Plaintiff purchased the Private Selection Smoked Gouda described as having a "distinctive smoky flavor" with the labeling identified here at Ralph's grocery stores within several miles from where she resides, between August 2020 and August 2023.

75.    Plaintiff bought the Product at or exceeding the above-referenced price.

76.    Plaintiff paid more for the Product than she would have had she known the representations and omissions were false and misleading or would not have purchased it.

77.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

78.    Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

79.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its attributes, features, and/or composition.

80.    Plaintiff is unable to rely on the representations not only of this Product, but other similar foods that are represented as being smoked because she is unsure whether those representations are truthful.

81.    If Defendant's labeling were to be truthful, Plaintiff could rely on the labeling of other such products.

## JURISDICTION AND VENUE

82.    Jurisdiction over this proceeding is based on activity in the State of California, and in this County, and misconduct alleged herein which was intentionally directed at residents of the State of California.

83.    This Court has jurisdiction under Article VI, § 10 of the California Constitution and § 410.10 of the Code of Civil Procedure ("CCP").

84.    This Court has subject matter jurisdiction over this class action pursuant

1    to Bus. & Prof Code ("BPC") § 17200 *et seq*. (the "UCL") and CCP § 382.

2    85.    Plaintiff does not assert claims arising under the laws of the United States

3    of America.

4    86.    Venue is proper in this judicial district pursuant to CCP § 395, because

5    Defendant sells the Product to consumers within this State from Ralphs grocery stores

6    and Plaintiff relied on the representations made to her in this County, which is where

7    she learned they were false and misleading.

8

9    ## CLASS DEFINITION AND ALLEGATIONS

10    87.    This action is brought as a class action pursuant to CCP § 382 on behalf

11    of the following class:

12    **California Class:** All persons in California who

13    purchased the Private Selection Smoked Gouda

Cheese Slices in California during the statutes of

14    limitations for each cause of action alleged.

15    88.    Excluded from the Class are (a) Defendant, Defendant's board members,

16    executive-level officers, and attorneys, and immediate family members of any of the

17    foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate

18    family, and Court staff and (d) any person that timely and properly excludes himself

19    or herself from the Class.

20    89.    Common questions of issues, law, and fact predominate and include

21    whether Defendant's representations were and are misleading and if Plaintiff and class

22    members are entitled to damages.

23    90.    Plaintiff's claims and basis for relief are typical to other members

24    because all were subjected to the same unfair, misleading, and deceptive

25    representations, omissions, and actions.

26    91.    Plaintiff is an adequate representative because her interests do not

27    conflict with other members.

28    92.    No individual inquiry is necessary since the focus is only on Defendant's

16

1 practices and the class is definable and ascertainable.

2    93.    The class of persons is sufficiently numerous because Defendant has sold

3 the Product with the identified representations for several years throughout this State,

4 and it was bought by thousands of consumers.

5    94.    Individual actions would risk inconsistent results, be repetitive and are

6 impractical to justify, as the claims are modest relative to the scope of the harm.

7    95.    Plaintiff's counsel is competent and experienced in complex class action

8 litigation and intends to protect class members' interests adequately and fairly.

9    96.    Plaintiff seeks class-wide injunctive relief because the practices

10 continue.

11    **CLAIMS FOR RELIEF**

12    **FIRST CLAIM**
**Violation of California's Unfair Competition Law,**
13    **Cal. Bus. & Prof. Code § 17200,** *et seq.*

14    97.    Plaintiff incorporates all preceding paragraphs.

15    98.    California's Unfair Competition Law, BPC § 17200, *et seq.* ("UCL"),

16 prohibits any unlawful, unfair or fraudulent business act or practice and unfair,

17 deceptive, untrue or misleading advertising.

18    99.    Defendant's representations and omissions are "unlawful" because they

19 violate the FFDCA and its implementing regulations, including:

20    (a) 21 U.S.C. § 343(a), which deems food misbranded when the label

21        is "false or misleading in any particular";

22    (b) 21 C.F.R. § 101.22(i)(1)(i), which requires that the addition of

23        flavoring simulating a characterizing ingredient or processing

24        method be disclosed to consumers; and

25    (c) 21 C.F.R. § 133.193(b), which requires a cheese with a federal and

26        state standard of identity to "include [] a declaration of any flavor

27        [] that characterizes the food, in the manner prescribed in § 101.22

28        of this chapter." 21 C.F.R. § 133.193(b);

17

100.   Defendant's conduct is "unlawful" because it violates California's False Advertising Law, BPC § 17500, *et seq.* ("FAL"), and Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA").

101.   Defendant's conduct violates the Sherman Law, including:

(a) Section 110100 (adopting all FDA labeling regulations);

(b) Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

(c) Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

(d) Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

102.   Each of the challenged statements and omissions made and actions taken by Defendant as described herein violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

103.   Defendant's conduct was and continues to be unfair and fraudulent because it made materially false representations and omissions that caused consumers to believe the Product's smoked taste and darker color was only from being smoked over hardwoods even though this was due in part to added liquid smoke flavoring.

104.   Defendant is aware of the representations and omissions it has made about the Product and that the Product's smoked taste and darker color was not only from being smoked over hardwoods but due in part to added liquid smoke flavoring.

105.   Had Plaintiff been aware of Defendant's practices, she would not have

18

purchased the Product or paid as much, suffering damages.

106. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence corrective advertising.

## SECOND CLAIM
### Violation of California's False Advertising Law,
### Cal. Bus. & Prof. Code § 17500, *et seq.*

107. Plaintiff incorporates all preceding paragraphs.

108. The FAL prohibits "mak[ing] any false or misleading advertising claim."

109. Defendant makes "false [and] misleading advertising claim[s]" by deceiving consumers about how the Product's smoked taste and darker color was only from being smoked over hardwoods even though this was due in part to added liquid smoke flavoring.

110. In reliance on this false and misleading advertising, Plaintiff purchased and consumed the Product without knowledge its smoked taste and darker color was not only from being smoked over hardwoods but due in part to added liquid smoke flavoring.

111. Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

112. Plaintiff and Class Members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## THIRD CLAIM
### Violation of California's Consumers Legal Remedies Act,
### Cal. Civ. Code § 1750, *et seq.*

113. Plaintiff incorporates all preceding paragraphs.

114. The CLRA adopts a statutory scheme prohibiting deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

115. Defendant's policies, acts, and practices were designed to, and did, result

19

in the purchase, consumption and/or use of the Product primarily for personal, family, or household purposes, and violated and continue to violate sections of the CLRA, including:

    (a) Civil Code § 1770(a)(5), because Defendant represented that the Product had characteristics, attributes, features, capabilities, uses, benefits, and qualities it did not have;

    (b) Civil Code § 1770(a)(9), because Defendant advertised the Product with an intent not to sell it as advertised; and

    (c) Civil Code § 1770(a)(16), because Defendant represented that the Product had been supplied in accordance with its previous representations, when it was not.

116.   Pursuant Cal. Civ. Code § 1782(a), Plaintiff sent a CLRA Notice to Defendant after this action was commenced, which detailed and included these violations of the CLRA, demanded correction of these violations, and provided the opportunity to correct these business practices, prior to seeking monetary damages under the CLRA.

117.   Records from the carrier show the Notice was received.

118.   Defendant has not corrected the identified conduct within thirty days of receipt.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the proposed Class, pray for judgment and relief as follows:

A.    Certification of the Class, designating Plaintiff as representative of the Class and Plaintiff's Counsel as counsel for the Class;

B.    A declaration that Defendant has committed the violations alleged;

C.    For injunctive relief the Court deems appropriate;

FIRST AMENDED CLASS ACTION COMPLAINT
*Grimes v. Ralphs Grocery Company*, No. 2:23-cv-09086-TJH-PD

D.   For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and Cal Civ. Code § 1780;

E.   Compensatory and monetary damages, the amount of which is to be determined at trial;

F.   For punitive damages;

G.   For attorneys' fees;

H.   For costs of suit incurred;

I.   For pre- and post-judgment interest; and

J.   For such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action so triable.

Dated:   December 26, 2023

Respectfully submitted,

/s/ Kyle Gurwell

Kyle Gurwell (SBN 289298)
Law Office of Kyle Gurwell
7755 Center Ave Ste 1100
Huntington Beach CA 92647
(714) 372-2245
kng@lawofficekg.com

*Counsel for Plaintiff and Proposed Class*